## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
SHAWN Y. BROWN              :Civil Action No.: 2:12-cv-05314-JLL-MAH
                           :
            Plaintiff,     :
                           :
v.                         :
                           :
CITY OF JERSEY CITY, JERSEY :
CITY POLICE DEPARTMENT,OFFICER:
ANTHONY MAKOFA AND OFFICER  :
JONATHAN THOMSON,           :
                           :
            Defendants.    :
................................................:
```

_____

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT
_____

**JEREMY FARRELL**
**CORPORATION COUNSEL**
Attorney for Defendants' City of
Jersey City, Jersey City Police
Department, Police Officer Anthony
Makofka and Police Officer Jonathan
Thomson
Jersey City Law Department
City Hall-280 Grove Street
Jersey City, New Jersey 07302
Tel #: (201) 547-5229

**ON THE BRIEF:**

STEVIE D. CHAMBERS
Assistant Corporation Counsel

## TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS..............................................i-ii

TABLE OF AUTHORITIES........................................iii-vi

PRELIMINARY STATEMENT..........................................1-3

LEGAL ARGUMENT...............................................4-31

POINT I

      PLAINTIFF'S VERSION OF FACTS IS BLANTLY CONTRADICTED
BY THE VIDEO EVIDENCE AND BASED UPON THE VIDEO AND
OTHER UNDISPUTED MATERIAL FACTS JERSEY CITY IS
ENTITLED TO SUMMARY JUDGMENT..............................4-6

POINT II

      OFFICER MAKOFKA AND OFFICER THOMSON ARE ENTITLED TO
SUMMARY JUDGMENT BASED UPON THE UNDISPUTED MATERIAL
FACTS BECAUSE PLAINTIFF FAILED TO PRODUCE ANY EVIDENCE
THAT THE OFFICERS UTILIZED UNREASONABLE FORCE...........7-11

POINT III

      PLAINTIFF'S FALSE ARREST AND FALSE IMPRISONMENT CLAIMS
SHOULD BE DISMISSED BECAUSE THE UNDISPUTED MATERIAL
EVIDENCE SHOWS THAT PROBABLE CAUSE EXISTED FOR
PLAINTIFF'S ARREST.....................................12-16

POINT IV

      OFFICERS MAKOKFA AND THOMSON ARE ENTITLED TO QUALIFIED
IMMUNITY...............................................17-20

POINT V

      PLAINTIFF FAILED TO PRESENT ANY EVIDENCE THAT HE
SUFFERED A CONSTITUTIONAL VIOLATION AS A RESULT OF A
CITY OF JERSEY CITY CUSTOM, POLICY OR PRACTICE
THEREFORE JERSEY CITY IS ENTITLED TO SUMMARY JUDGMENT
.......................................................21-23

i

## TABLE OF CONTENTS CONT'D

**PAGE**

POINT VI

    PLAINTIFF FAILED TO PRODUCE ANY EVIDENCE TO SUSTAIN
HIS FIFTH, SIXTH, EIGHTH OR FOURTEENTH AMENDMENT
CLAIMS THEREFORE JERSEY CITY IS ENTITLED TO SUMMARY....24-27

POINT VII

    PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED BECAUSE
PLAINTIFF FAILED TO PROFFER OBJECTIVE MEDICAL EVIDENCE
THAT PLAINTIFF SUSTAINED A PERMANENT LOSS OF A BODILY
FUNCTION, PERMANENT DISFIGUREMENT, OR DISMEMBERMENT....28-29

POINT VIII

    JERSEY CITY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
PLAINTIFF FAILED TO SET FORTH A PRIMA FACIE
INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS CLAIM.......................................30-31

CONCLUSION................................................32

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

Abraham v. Raso, 183 F. 3d 279 (3d Cir. 1999) ..................7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ..........4

Andrews v. City of Philadelphia, 895 F.2d 1469
(3d Cir. 1990).................................................21

Ashcroft v. Iqbal, 555 U.S. 544 (2009)........................24

Bayer v. Township of Union, 414 N.J. Super. 238
(App. Div. 2010) .............................................13

Beck v. Borough of Ramsey,379 U.S. 89 (1964) ....................

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)...............24

Berg v. Cnty. Of Allegheny, 219 F.3d 261 (3d Cir. 2000).......27

Brooks v. Odom, 150 N.J. 395 (1997)...........................28

Brown v. Muhlenberg Township, 269 F.3d 205 (3d Cir. 2001)
.............................................................22

Bixler v. Central Penn. Teamsters Health & Welfare
Fund, 12 F.3d 1292 (3d Cir. 1993) ............................5

Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355 (1998).......30

Caldwell v. Beared, 324 F. App'x 186 (3d Cir. 2009)...........25

Carter v. City of Phila., 181 F.3d 339 (3d Cir. 1999).........22

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).................4

Chapman v. New Jersey, 2009 WL 2634888(D.N.J 2009) ............5

City of Canton, Ohio v. Harris, 489 U.S. 378 (1989).......22, 23

Couden v. Duffy, 446 F.3d 483 (3d Cir. 2006) .................7

**TABLE OF AUTHORITIES CONT'D**

<u>CASES</u>                                                              <u>PAGE</u>

<u>DelaCruz v. Borough of Hillsdale</u>, 183 <u>N.J.</u> 149 (2005)
.........................................................28

<u>Dowling v. City of Phila.</u>, 855 <u>F.2d</u> 136 (3d Cir. 1988) .......13

<u>Giles v. Davis</u>, 427 <u>F.3d</u> 197 (3d Cir. 2005) ...................17

<u>Graham v. Connor</u>, 409 <u>U.S.</u> 386 (1989) ..................7, 18, 30

<u>Harlow v. Fitzgerald</u>, 457 <u>U.S.</u> 800 (1982) .....................17

<u>Hedges v. Musco</u>, 204 <u>F.3d</u> 109, 121 n. 12 (3d Cir. 2000) .......5

<u>Illinois v. Wardlow</u>, 528 <u>U.S.</u> 119 (2000) .....................12

<u>Ingraham v. Wright</u>, 430 <u>U.S.</u> 651 (1977).......................26

<u>Kopec v. Tate</u>, 361 <u>F.3d</u> 772 (3d Cir. 2004 .....................7

<u>Lascurain v. City of Newark</u>, 349 <u>N.J.</u> <u>Supper</u>. 251
(App. Div. 2002................................................30

<u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>,
475 <u>U.S.</u> 574 (1986) ...........................................5

<u>Monell v. New York City Dept. of Social Services</u>, 436
<u>U.S.</u> 658 (1978) ..........................................21, 23

<u>Natale v. Camden County Corr. Facility</u>, 318 <u>F.3d</u> 575
(3d. Cir. 2003)...............................................26

<u>Nguyen v. U.S. Cath. Conf.</u>, 719 <u>F.2d</u> 52 (3d Cir. 1983) .......25

<u>Owens v. Feigin</u>, 194 <u>N.J.</u> 607 (2008) ..........................5

<u>Palma v. Atlantic County</u>, 53 <u>F.Supp.2d</u> 743 (D.N.J. 1999)
......................................................12, 13

iv

**TABLE OF AUTHORITIES CONT'D**

<u>CASES</u>                                                          <u>PAGE</u>

<u>Papachristou v. City of Jacksonville</u>, 405 <u>U.S.</u> 156 (1972) .....12

<u>Pearson v. Callahan</u>, 555 <u>U.S.</u> 223 (2009) .....................17

<u>Public Utilities Commission v. Pollak</u>, 343 <u>U.S.</u> 451 (1952)
.........................................................25

<u>Ramos v. Flowers</u>, 429 <u>N.J. Super</u>. 13 (App. Div. 2012) ........17

<u>Reitz v. County of Bucks</u>, 125 <u>F.3d</u> 139 (3d Cir. 1997).........22

<u>Santiago v. City of Vineland</u>, 107 <u>F. Supp. 2d</u> 512
(D.N.J. 2000) .............................................12

<u>Saucier v. Katz</u>, 533 <u>U.S.</u> 194 (2001) .....................17, 18

<u>Scott v. Harris</u>, 550 <u>U.S.</u> 372 (2007) .......................5, 8

<u>State v. Gray</u>, 59 <u>N.J.</u> 563 (1971)...............................14

<u>State v. Perlstein</u>, 206 <u>N.J. Super</u>. 246 (1985) ................14

<u>Thorpe v. Cohen</u>, 259 <u>N.J. Super</u>. 523 (App. Div. 1992).........28

<u>United States v. Delfin-Colina</u>, 464 <u>F.3d</u> 393 (3d Cir. 2006) ...12

<u>United States v. Myers</u>, 308 <u>F. 3d</u> 251 (3d. Cir. 2002) ........13

<u>Wildoner v. Borough of Ramsey</u>, 162 <u>N.J.</u> 375 (2000) ...........13

<u>Whitley v. Albers</u>, 475 <u>U.S.</u> 312 (1986).........................26

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 56(a) ........................................4

## <u>TABLE OF AUTHORITIES CONT'D</u>

<u>**PAGE**</u>

**<u>NEW JERSEY STATUTES</u>**

<u>N.J.S.A.</u> 10:6-2 .............................................5

<u>N.J.S.A.</u> 2C:29-1(a) ...................................13, 14

<u>N.J.S.A.</u> 2C:29-29(a)(1) ..................................13

<u>N.J.S.A.</u> 2C:29-2A(1) ..................................14, 15

<u>N.J.S.A.</u> 39:5-25 ...........................................14

<u>N.J.S.A.</u> 39:4-97.2 ........................................15

<u>N.J.S.A.</u> 39:3-29 ..........................................15

<u>N.J.S.A.</u> 59:3-3 ........................................20, 30

<u>N.J.S.A.</u> 59:9-2(d) ........................................28

**<u>U.S. CONSTITUTION</u>**

<u>U. S. Const. Amendment V</u>...................................25

<u>U. S. Const. Amendment VI</u>..................................25

**PRELIMINARY STATEMENT**

We represent the City of Jersey City, the Jersey City Police Department, Officer Anthony Makofka and Officer Jonathan Thomson (hereinafter sometimes referred to as "defendants" or "Jersey City") in this matter.

Plaintiff, Shawn Brown, alleges, among other claims, that defendants utilized excessive force and falsely arrested him in violation of the Fourth Amendment.

This matter presents a slight twist on the standard constitutional case because most of the pertinent parts of the incident were captured by a surveillance video.

In this matter, the defendant officers observed plaintiff operating his motorcycle on a sidewalk and conducted a motor vehicle stop. During the stop, plaintiff was repeatedly asked to produce his driver's license, registration card and insurance card. After repeatedly refusing and being warned that his refusal would lead to his arrest, plaintiff again refused to produce the documents and was told that he was under arrest and asked to place his hands behind his back. Instead, plaintiff crossed his arms and grabbed a hold of the protective motorcycle vest that he was wearing in an attempt not to be handcuffed.

Plaintiff alleges that he was not operating his motorcycle on the sidewalk; therefore, defendants conducted a motor vehicle stop without cause. Plaintiff alleges that he was not given

1

sufficient time to retrieve his documents. Plaintiff also alleges that defendants utilized excessive force by aggressively throwing him to the ground and assaulting him. Plaintiff states that he never resisted the officers' commands and was completely submissive during the entire incident.

Plaintiff's allegations are blatantly contradicted by the surveillance video, and it is well-established law that the court will not draw inferences that are inconsistent with video evidence. The surveillance video clearly shows plaintiff driving his motorcycle on the sidewalk.  The interaction in which the officers repeatedly requested plaintiff's credentials occurs off camera, but the video shows plaintiff grasping the side of his motorcycle vest in an attempt not to be handcuffed. The video also illustrates plaintiff rolling onto his stomach with his hands underneath him in a further attempt not to be handcuffed.

Plaintiff states that he was beaten by the original two officers, defendants Makofka and Thomson, and then by the backup officers.

This is another allegation that is blatantly contradicted by the video. The video shows the officers using a reasonable amount of force while struggling with plaintiff to get him to release his hands. It should be noted that although the

2

surveillance video is approximately 25 minutes long, only the first 6 minutes are relevant.

As a result of the incident, plaintiff was issued numerous motor vehicle tickets, and also charged with obstruction of a governmental function and resisting arrest. Plaintiff appeared in Jersey City Municipal Court on the charges and entered into a plea bargain where he pled guilty to the amended charges of unsafe operation of a motor vehicle and violating the Jersey City Municipal Code Noise Ordinance.

Thus, based upon the undisputed material facts and applicable law, defendants are entitled to summary judgment.

**LEGAL ARGUMENT**

**POINT I**

**PLAINTIFF'S VERSION OF FACTS IS BLATANTLY CONTRADICTED BY THE VIDEO EVIDENCE AND BASED UPON THE VIDEO AND OTHER UNDISPUTED MATERIAL FACTS JERSEY CITY IS ENTITLED TO SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56 states in part that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(citing Fed. R. Civ. P. 56). A fact is considered "material" if it affects "the outcome of the suit under the governing law...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986).

Furthermore, "when a properly supported motion for summary judgment [has been] made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." Id. at 250. "Summary judgment is still appropriate where the

record ... could not lead a rational trier of fact to find for the non-moving party...." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587(1986). The non-movant's evidence must be significantly probative; if it is "merely colorable" summary judgment may be granted. Bixler v. Central Penn. Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d Cir.1993).

However, when the non-movant's version of facts is blatantly contradicted by video evidence, the court should not adopt that version of facts for purposes of ruling on a motion for summary judgment. Scott v. Harris, 550 U.S. 372, 380 (2007). The court should instead view "the facts in the light depicted by the videotape." Id.

In the instant matter, plaintiff's testimony at deposition is blatantly contradicted by the surveillance video. As explained herein, there is no genuine dispute of material fact and Jersey City is entitled to summary judgment as a matter of law.

The New Jersey Civil Rights Act ("N.J.C.R.A.") N.J.S.A. 10:6-2 was modeled after and enforces similar rights as §1983. Owens v. Feigin, 194 N.J. 607, 611 (2008). This Circuit has repeatedly interpreted N.J.C.R.A. analogously to its federal counterpart. Chapman v. New Jersey, 2009 WL 2634888, *3 (D.N.J. 2009); Hedges v. Musco, 204 F.3d 109, 121 n. 12 (3d Cir. 2000).

5

Therefore, for similar reasons presented herein, plaintiff's New Jersey Constitution claims fail.

<u>**POINT II**</u>

**OFFICER MAKOFKA AND OFFICER THOMSON ARE ENTITLED TO SUMMARY JUDGMENT BASED UPON THE UNDISPUTED MATERIAL FACTS BECAUSE PLAINTIFF FAILED TO PRODUCE ANY EVIDENCE THAT THE OFFICERS UTILIZED UNREASONABLE FORCE**

The Fourth Amendment prohibits the use of excessive force when arresting a suspect. <u>Abraham v. Raso</u>, 183 <u>F.3d</u> 279, 288 (3d Cir. 1999). An officer may only use reasonable force when effectuating an arrest. <u>Kopec v. Tate</u>, 361 <u>F.3d</u> 772, 776-78 (3d Cir. 2004). To determine whether the force was reasonable, the court must apply the reasonableness test, which requires an analysis of the facts and circumstances of the incident. <u>Graham v. Connor</u>, 490 <u>U.S.</u> 386, 396 (1989). Determining whether the conduct was reasonable requires the court to consider the severity of the crime, the immediate threat posed to the officer's safety, whether the suspect was actively resisting the arrest and the number of suspects with whom the officers had to contend at one time. <u>Couden v. Duffy</u>, 446 <u>F.3d</u> 483, 496-97 (3d Cir. 2006). The degree of force that an officer is allowed to use is dictated by the suspect's behavior. <u>Graham</u>, 490 <u>U.S.</u> at 396. The reasonableness of force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id</u>.

In the instant matter, although several officers played a role in the incident, only Officer Makofka and Officer Thomson

are named defendants. We submit that none of the Jersey City police officers engaged in an excessive use of force to detain plaintiff. However, since Officer Makofka and Officer Thomson are the only individually named defendants, and plaintiff did not allege a failure to intervene claim, the sole issue is whether these two officers utilized excessive force.

Plaintiff testified that Officer Makofka and Officer Thomson did not have any reason to conduct a motor vehicle stop as he was not engaged in anything improper. (Ex. C-Plaintiff dep. 25:22-26:13; Ex. N-Plaintiff's Responses to Interrogatories #10).

Plaintiff's testimony is blatantly contradicted by the surveillance video produced by plaintiff during discovery, and it is well-established that a version of facts blatantly contradicted by video evidence will not be adopted by the court for the purpose of a summary judgment motion. Scott, 550 U.S. at 380.

Officers Thomson and Makofka testified that they observed plaintiff operating his motorcycle on the sidewalk. (Ex. D-Thomson dep. 30:24-31:3; Ex. E-Makofka dep. 36:12-17). Plaintiff claims that he was simply walking his motorcycle across the sidewalk. (Ex. C-Plaintiff dep. 20:21-21:7, 25:16-21). At the beginning of the surveillance video, at 3 seconds into the video, plaintiff is clearly shown riding his motorcycle on the

sidewalk. (Ex. Q-Video). Thus, the officers, who observed this behavior, were justified in conducting the motor vehicle stop.

Plaintiff also denies that he resisted the officers in any way. Plaintiff stated that he was completely submissive throughout the incident. (Ex. C-Plaintiff dep. 39:9-18). This testimony is also blatantly contradicted by the video. In the surveillance video, when plaintiff and the two officers come into frame, plaintiff is shown in a crouched position with his hands across his chest. (Ex. Q-See video at 2:59-3:06). It must be noted that plaintiff testified that he was not hit or struck by the officers while he was standing. Thus, it is evident that plaintiff's bent position, with his hands secured on his vest, was in furtherance of his attempt to resist the officers. A few seconds later, when plaintiff is on the ground, the video shows plaintiff rolling onto his stomach with his hands underneath his body. This was another act performed in furtherance of plaintiff's resistance. (Ex. Q-Video).

The amount of force used by Officers Thomson and Makofka to effectuate the arrest was reasonable and warranted. The officers attempted to place cuffs on plaintiff's hands because he was under arrest. Plaintiff crossed his arms against his chest and locked them into his safety vest that he was wearing.

Plaintiff testified that after being slammed to the ground by Officers Thomson and Makofka, but prior to the other

officers' arrival, Thomson and Makofka repeatedly and actively struck plaintiff in his back with their knees. (Ex. C-Plaintiff dep. 42:2-20). Plaintiff's testimony is patently false. The surveillance video shows that plaintiff was taken to the ground by Officers Thomson and Makofka at the three minute and four second mark. Fifteen seconds later, the first backup officers arrive in the frame. The video shows no activity that supports plaintiff's testimony that he was slammed to the ground and repeatedly hit prior to the other officers' arrival. (Ex. Q-Video).

Furthermore, several of the officers testified that, pursuant to their training, they attempted to utilize compliance holds on plaintiff. Plaintiff described the ankle compliance hold as the officer trying to break his ankle. Plaintiff described Officer Rems attempts to hold his head down so the other officers could control his hands, as the officer plunging his head. Plaintiff uses a large amount of hyperbole and exaggeration as he described this event. However, when the facts are considered without exaggeration, it is evident that the force utilized was reasonable.

As illustrated by the video, throughout the incident, Officer Makofka is located on the left side of plaintiff and Officer Thomson is located on the right side of plaintiff. (Thomson dep. 81:8-12; Ex. Q-Video). There is simply no

evidence that these two officers engaged in an excessive use of force.

Furthermore, Officer Thomson testified at length about the tactics that he used to detain plaintiff, i.e. elbow compliance hold, and how the tactics were pursuant to his training. (Ex. D-Thomson dep. 62:24-63:7). Plaintiff failed to produce any evidence that Officers Thomson and Makofka's conduct was inconsistent with their police academy training or the New Jersey Attorney General Use of Force guidelines.

It must be noted that, as the video illustrates, within approximately twenty seconds of the arrival of Officer Crispina and his K-9, the officers are able to handcuff plaintiff. (Ex. Q-Video). We surmise that plaintiff immediately released his hands as soon as he heard the K-9 barking. Thus, any argument that plaintiff was unable to release his hands is without merit.

The undisputed material evidence is clear and a rational trier of fact could not find for plaintiff. Therefore, Officers Makofka and Thomson are entitled to summary judgment.

<u>**POINT III**</u>

**PLAINTIFF'S FALSE ARREST AND FALSE IMPRISONMENT CLAIMS SHOULD BE DISMISSED BECAUSE THE UNDISPUTED MATERIAL EVIDENCE SHOWS THAT PROBABLE CAUSE EXISTED FOR PLAINTIFF'S ARREST**

In the Complaint, plaintiff alleges that he was unlawfully detained by Officers Makofka and Thomson. Plaintiff further alleges in Count One that he was falsely arrested in violation of § 1983 and state law.

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."<u>Illinois v. Wardlow</u>, 528 <u>U.S.</u> 119, 123 (2000). To conduct a motor vehicle stop, an officer needs to only have reasonable, articulable suspicion that a vehicle has committed an offense. <u>United States v. Delfin-Colina</u>, 464 <u>F.3d</u> 392, 396 (3d Cir. 2006).

The Constitution prohibits police officers from arresting a citizen without probable cause for the arrest. <u>Papachristou v. City of Jacksonville</u>, 405 <u>U.S.</u> 156, 169 (1972). To state a §1983 claim for false arrest, a plaintiff must establish that he was arrested by a state actor without probable cause. <u>Santiago v. City of Vineland</u>, 107 <u>F.Supp.2d</u> 512 (D.N.J. 2000) (citing <u>Palma v. Atlantic County</u>, 53 <u>F.Supp.2d</u>. 743, 755 (D.N.J. 1999).

When considering whether probable cause existed, the Court must look to the law of the state where the arrest took place. United States v. Myers, 308 F.3d 251, 255 (3d Cir.2002). In New Jersey, probable cause exists if at the time of the arrest "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Wildoner v. Borough of Ramsey, 162 N.J. 375,389 (2000)(citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Probable cause is a legal question to be decided by a judge, not a jury. Bayer v. Township of Union, 414 N.J. Super. 238, 263 (App. Div. 2010). The existence of probable cause is an absolute defense to state or federal false arrest or imprisonment claims. Palma, 53 F. Supp. at 755; Wildoner, 162 N.J. at 389. The issue is not whether the person committed the offense, but whether there was probable cause to believe the person committed the offense. Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir 1988).

In the instant matter, plaintiff was charged with obstructing administration of law or other government function (N.J.S.A. 2C:29-1a) and Resisting arrest (N.J.S.A. 2C:29-29 (a)(1)).

N.J.S.A. 2C:29-1(a) states in part,

> A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act. This section does not apply to failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

N.J.S.A. 2c;29-2A(1) states in part,

> Except as provided in paragraph (3), a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest.

The "independently unlawful act" under N.J.S.A. 2C:29-1(a) include those acts which violate other statutes and need not be the subject of an independent formal charge. State v. Perlstein, 206 N.J. Super. 246, 252-53(1985). N.J.S.A. 39:5-25 states in part that any police officer may, "without a warrant, arrest any person violating in his presence any provision of Chapter 3 of this title…" Specifically, if a person fails to produce his driver's license, insurance card and motor vehicle registration when requested, the officer is empowered to arrest him. Perlstein, 206 N.J. Super. at 256 (Citing State v. Gray, 59 N.J. 563, 568 (1971)).

In the instant case, plaintiff clearly operated his motorcycle on the sidewalk. Therefore, the officers had probable cause to conduct a motor vehicle stop. Further, plaintiff pled guilty to Unsafe operation of a motor vehicle in violation of N.J.S.A. 4:97.2. (Ex. P-Disposition). Thus, plaintiff's illegal seizure claim based upon the stop is without merit.

During the motor vehicle stop, pursuant to N.J.S.A. 39:3-29, Officer Thomson requested that plaintiff produce his driver's license, insurance card and motor vehicle registration. Plaintiff repeatedly refused to produce the documents. (Ex. D-Thomson dep.42:6-10; 43:14-17). After being told a sixth time to produce the documents and refusing, Officer Thomson told plaintiff that he was under arrest. Plaintiff argues that he was not given sufficient time to retrieve his documents. (Ex. C-Plaintiff dep. 29:17-30:2). Plaintiff further denies that he disobeyed the officer's commands.

Plaintiff will undoubtedly argue that there is a material issue of fact as to whether he refused to produce his credentials when requested. However, even if this argument is accepted, the analysis does not stop there. It is not a valid defense to the charge of resisting arrest to argue that the officer was acting unlawful in making an arrest. See N.J.S.A. 2C:29-2A(1). Plaintiff admits that he was told he was under arrest. (Ex. C-Plaintiff dep. 29:17-30:2). He simply argues that

15

the statement occurred after the officer's second request for the document, not the sixth. This is not germane to the issue. The issue is whether plaintiff was told that he was under arrest prior to his resistance. The answer is yes since plaintiff alleges that he never resisted at any point during the incident. (Ex. C-Plaintiff dep. 39:9-18).

The surveillance video clearly shows plaintiff clasping on to his protective vest in an attempt not to be handcuffed. Thus, no issue exists as to whether plaintiff was resisting arrest. (Ex. Q-See video at 2:59-3:06). No reasonable person could believe that plaintiff's behavior, as exhibited at 2:59-3:06 in the video, was consistent with someone who was obeying the officer's instructions and not resisting arrest. Thus, probable cause existed for the charges and his arrest.

Furthermore, although not dispositive of this issue, it must be noted that plaintiff pled guilty to the amended charges of unsafe operation of a motor vehicle and violating the Jersey City municipal noise ordinance. (Ex. P-Disposition).

Therefore, Officers Makofka and Thomson are entitled to summary judgment.

<u>**POINT IV**</u>

**OFFICERS MAKOKFA AND THOMSON ARE ENTITLED TO QUALIFIED IMMUNITY**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 <u>U.S</u>. 800, 818 (1982). The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. <u>Gilles v. Davis</u>, 427 <u>F.3d</u> 197, 203-204 (3d Cir. 2005). Thus the Court asks: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the right was clearly established at the time of the violation. <u>Saucier v. Katz</u>, 533 <u>U.S</u>. 194, 201 (2001). The two prongs do not have to be addressed in order. A Court is permitted to exercise discretion in deciding which of the two prongs of the qualified immunity test should be addressed first. <u>Pearson v. Callahan</u>, 555 <u>U.S</u>. 223, 242 (2009). As qualified immunity is an affirmative defense to claims brought under §1983, it is as well a defense to claims brought under the New Jersey Civil Rights Act. <u>Ramos v. Flowers</u>, 429 <u>N.J. Super</u>. 13, 33 (App. Div. 2012).

The first prong of the qualified immunity analysis requires an inquiry into whether plaintiff's constitutional rights were violated. The second prong requires an analysis into whether the alleged right was clearly established at the time.

As explained in Point II, Supra, Fourth Amendment excessive force claims are properly analyzed under the objectively reasonable standard. <u>Graham,</u> 490 <u>U.S.</u> at 395. When addressing qualified immunity, the reasonableness of the force used should be judged from an on-scene perspective since officers are often required to make split second decisions in rapidly evolving situations. <u>Saucier</u>, 533 <u>U.S.</u> at 205.

In the instant matter, plaintiff alleges that he was beaten by Officers Makofka and Thomson. Plaintiff testified that the alleged assault occurred while he was on the ground. He stated that he was not hit while standing up.

With regard to Officer Makofka, the surveillance video clearly shows the officer throughout the time that plaintiff was on the ground. Officer Makofka is located on the left side of plaintiff. (Thomson dep. 81:8-12). At no point does the video show Officer Makofka kicking or kneeing plaintiff, as plaintiff falsely claimed. Furthermore, the minimal amount of force used was reasonable in light of the fact that plaintiff was physically resisting arrest by holding on to his protective vest

that he was wearing. Thus, Officer Makofka did not violate plaintiff's constitutional rights.

For the sake of argument, even if Officer Makofka's actions are determined to be a constitutional violation, it was not clearly established at the time. Specifically, there is no evidence that Officer Makofka was aware that detaining a physically resisting person who was under arrest with the tactics authorized by the Attorney General's Use of Force policy was a constitutional violation.

With regard to Officer Thomson, plaintiff alleges that Officer Thomson repeatedly struck him after he was on the ground but before the backup officers arrived. (Ex. C-Plaintiff dep. 42:2-20).

This allegation is refuted by the surveillance video. The video clearly shows Officer Thomson's legs before the other officers arrive and Officer Thomson does not repeatedly knee or kick plaintiff.

Officer Thomson testified that during the incident, pursuant to his police academy training, he attempted an elbow compliance hold, and also struck plaintiff in his side in an attempt to force plaintiff to release his arms. Officer Thomson testified that he was instructed on these tactics at the police academy. Therefore, Officer Thomson did not violate plaintiff's constitutional rights.

For the sake of argument, even if Officer Thomson's actions are determined to be a constitutional violation, it was not clearly established at the time. Specifically, plaintiff failed to proffer any evidence, expert or otherwise, that Officer Thomson deviated from the state mandatory training that each police officer undergoes to become an officer. Moreover, Officer Thomson was very clear in explaining what force he believed that he was allowed to use and what force he believed was impermissible. Specifically, Officer Thomson testified as to the reasons that he did not use his baton. (Ex. D-Thomson dep. 62:24-63:7, 63:14-64:14, 64:20-65:23). Thus, Officer Thomson would not know that utilizing the tactics that he learned in the academy violated plaintiff's rights.

Therefore Officer Thomson is entitled to qualified immunity.[1]

---

[1]   The New Jersey Tort Claims Act provides good faith immunity for the acts of public employees. N.J.S.A. 59:3-3 states that "a public employee is not liable if he acts in good faith in the execution or enforcement of any law." Thus, for the same reasons presented herein, plaintiff's common law claims in Counts Four, Five and Sixth should be dismissed.

## POINT V

**PLAINTIFF FAILED TO PRESENT ANY EVIDENCE THAT HE SUFFERED A CONSTITUTIONAL VIOLATION AS A RESULT OF A CITY OF JERSEY CITY CUSTOM, POLICY OR PRACTICE THEREFORE JERSEY CITY IS ENTITLED TO SUMMARY JUDGMENT**

In Ninth Count of the Complaint, plaintiff alleges that his constitutional rights were violated due to the City of Jersey City's failure to train its employees.

A municipality can only be held liable in a §1983 action when the alleged constitutional violation arises out of a policy, regulation or decision officially adopted by the municipality or informally adopted by custom. Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978). It has been held that a "policy is made when a 'decision maker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when; though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990).

There are limited situations where the 'failure to train' an employee can be the basis of a §1983 claim. "Only where a municipality's failure to train its employees in a relevant

respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under §1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).

With regard to failure to train claims, the Third Circuit provides ample case law and persuasive guidance. To establish that a municipality's failure to train amounts to deliberate indifference, a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Establishing municipal liability on failure to train claim is extremely difficult. Reitz v. County of Bucks, 125 F.3d 139 (3d Cir.1997). The deliberate indifference test requires a plaintiff to show that the need for more training was so obvious and so likely to lead to a constitutional violation that the failure to respond amounts to deliberate indifference. Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir.2001).

In the instant case, plaintiff's claim must be dismissed because, as explained herein, there is no underlying violation

of his constitutional rights. Furthermore, for the sake of argument, even if there is a violation, plaintiff fails to present any evidence that the alleged violation was a result of a City custom, policy and/or practice. It is well established that to sustain a <u>Monell</u> claim there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," <u>Canton</u>, 489 <u>U.S</u>. at 385. Plaintiff fails to proffer any evidence to support such a link. Therefore, Jersey City is entitled to summary judgment.

<u>**POINT VI**</u>

**PLAINTIFF FAILED TO PRODUCE ANY EVIDENCE TO SUSTAIN HIS FIFTH, SIXTH, EIGHT OR FOURTEENTH AMENDMENT CLAIMS THEREFORE JERSEY CITY IS ENTITLED TO SUMMARY JUDGMENT**

It is well-established that a complaint alleging federal violations must contain sufficient factual material, if taken as true, to substantiate the legal conclusions. <u>Ashcroft v. Iqbal</u>, 556 <u>U.S</u>. 662, 678 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 <u>U.S</u>. 544, 570 (2007)). A complaint that recites the elements of a cause of action "supported by mere conclusory statements" will not survive a motion to dismiss. <u>Iqbal,</u> 556 <u>U.S</u>. at 678.

In the instant matter, in Count One of the Complaint plaintiff simply alleges that defendants violated his Fifth, Sixth, Eighth and Fourteenth Amendment rights. Plaintiff's claims should be dismissed because he failed to satisfy the applicable pleading standard. In addition, defendants are entitled to summary judgment because the record is devoid of any evidence to support plaintiff's claims.

**A. Plaintiff failed to present any evidence in support of his Fifth Amendment claim therefore Jersey City is entitled to summary judgment**

The First Count of the Complaint contains an allegation that plaintiff's Fifth Amendment rights were violated by the named defendants.

The Fifth Amendment provides that "no person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. Amendment V. It is well-established law that the Fifth Amendment only restricts federal government actions. Public Utilities Commission v. Pollak, 343 U.S. 451, 461 (1952); Nguyen v. U.S. Cath. Conf., 719 F.2d 52, 54 (3d Cir.1983); Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir.2009) ("the due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials.").

In the instant case, it is undisputed that the Jersey City defendants are not federal officials. Therefore, plaintiff's Fifth Amendment fails.

### B. Plaintiff failed to present any evidence in support of his Sixth Amendment claim therefore Jersey City is entitled to summary judgment

The Sixth Amendment states,

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. U.S. Const. Amendment VI.

In the instant matter, plaintiff's reference to the Sixth Amendment is so vague that defendants cannot determine an

alleged cause of action. Thus, defendants are entitled to summary judgment.

### C. Plaintiff failed to present any evidence in support of his Eighth and Fourteenth Amendment claims therefore Jersey City is entitled to summary judgment

In the First Count of the Complaint, plaintiff alleges that his Eighth and Fourteenth Amendment rights were violated.

It is well-established law that the Eight Amendment only applies to post-conviction violations. Ingraham v. Wright, 430 U.S. 651 (1977). In the instant case, there are no allegations of any post-conviction conduct. Thus, defendants are entitled to summary judgment.

Furthermore, it should be noted that plaintiff does not have a due process claim under the Fourteenth Amendment for cruel and unusual punishment. Under the Eight Amendment, for conduct to be considered cruel and unusual punishment, the purported conduct must involve more than ordinary lack of due care for the prisoner's interests or safety. Whitley v. Albers, 475 U.S. 312, 318 (1986). The same analysis applies to a Fourteenth Amendment claim. Natale v. Camden County Corr. Facility, 318 F.3d 575, 581 (3d Cir.2003).

In addition, any substantive due process claim under the Fourteenth Amendment must be dismissed. When an alleged constitutional violation is governed by a specific amendment, a Fourteenth Amendment due process analysis would be

inappropriate.  <u>Berg v. Cnty. of Allegheny</u>, 219 <u>F.3d</u> 261, 268-69 (3d Cir. 2000).

In the instant case, plaintiff's false arrest and excessive force claims are properly analyzed under the Fourth Amendment.

Therefore, defendants are entitled to summary judgment.

<u>**POINT VII**</u>

**PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO PROFFER OBJECTIVE MEDICAL EVIDENCE THAT PLAINTIFF SUSTAINED A PERMANENT LOSS OF A BODILY FUNCTION, PERMANENT DISFIGUREMENT, OR DISMEMBERMENT**

Under the Tort Claims Act, non-economic damages, such as damages for pain and suffering, may be recovered against a public entity or employee only if a plaintiff has suffered a "permanent loss of a bodily function, permanent disfigurement, or dismemberment where the medical expenses are in excess of $3,600.00." <u>N.J.S.A.</u> 59:9-2(d). The New Jersey Supreme Court held that to overcome the permanency threshold, the plaintiff must submit objective medical evidence of an injury constituting an objective impairment resulting in a permanent loss of function that is substantial. <u>Brooks v. Odom</u>, 150 <u>N.J.</u> 395 (1997). The existence of such an injury must be supported by objective medical evidence. <u>Id</u>. The permanency requirement also applies to common law false arrest and false imprisonment claims. <u>DelaCruz v. Borough of Hillsdale,</u> 183 <u>N.J</u>. 149, 153 (2005); <u>Thorpe v. Cohen,</u> 258 <u>N.J. Super</u>. 523, 531 (App. Div. 1992).

In the instant case, the record is devoid of any objective medical evidence that plaintiff satisfied the injury threshold. Specifically, plaintiff failed to produce any expert testimony

that he sustained a permanent loss of bodily function that is substantial as a result of this incident. Therefore, defendants are entitled to summary judgment.

## POINT VIII

**JERSEY CITY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF FAILED TO SET FORTH A PRIMA FACIE INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM**

Counts Seven and Eight of the Complaint contain state law claims for intentional and negligent infliction of emotional distress. In order to prevail on an emotional distress claim, plaintiff "must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988).

In this matter, defendants enjoy immunity against these state law claims because the alleged injury occurred during defendants good faith execution of the law. The New Jersey Tort Claims Act provides good faith immunity for the acts of public employees. N.J.S.A. 59:3-3 states that "a public employee is not liable if he acts in good faith in the execution or enforcement of any law." When considering the good faith standard, the test to be applied is whether the employee's conduct is objectively reasonable. Lascurain v. City of Newark, 349 N.J. Super. 251, 287 (App.Div.2002). Excessive force claims under the Fourth Amendment are also analyzed under the objectively reasonable standard. Graham, 490 U.S. at 395. Thus, for the reasons

articulated in Point's II and IV, Supra, defendants are immune under the Tort Claims Act.

## CONCLUSION

For the reasons set forth herein, defendants are entitled to summary judgment.

Respectfully submitted,

**JEREMY FARRELL
CORPORATION COUNSEL**

Date: November 3, 2014          /s/ Stevie D. Chambers
SDC/cw                          STEVIE D. CHAMBERS
                                Assistant Corporation Counsel