**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAWN Y. BROWN,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF JERSEY CITY; JERSEY CITY POLICE DEPARTMENT; OFFICER ANTHONY MAKOFKA AND OFFICER JONATHAN THOMSON,<br><br>    Defendants. | Civil Action No. 12-5314(JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants City of Jersey City ("Jersey City"), Jersey City Police Department ("JCPD"), Officer Anthony Makofka ("Makofka") and Officer Jonathan Thomson ("Thomson")("The Officers")( Collectively "Defendants")'s  motions for summary judgment against Plaintiff Shawn Y. Brown ("Plaintiff").  The Court has considered the submissions made in support of and in opposition to the motions and decides this matter without oral argument pursuant Federal Rule of Civil Procedure 78.  For the reasons set forth below, Defendants' motions are **granted.**

## I. BACKGROUND[1]

On June 29, 2012, Plaintiff filed a Complaint in the Superior Court of New Jersey, Hudson County against Defendants. (Def's 56.1 Statement ¶ 1). On August 23, 2012, Defendants removed this matter to the United States District Court. ((*Id.* at ¶ 2). On September 2, 2011,

---

[1] The facts set forth herein are taken from the parties' Local Civil Rule 56.1 statements unless otherwise noted.

Plaintiff was stopped by Officers Makofka and Thomson for allegedly operating a motorcycle on the sidewalk. (*Id.* at ¶¶ 7-15). Thomson then asked Plaintiff, "What are you doing on the sidewalk?" and asked for Plaintiff to produce his driving credentials. (*Id.* at ¶¶ 16-19). Thomson testified that thereafter he allegedly asked Plaintiff for his credentials six times. After Plaintiff allegedly failed to comply, Thomson pulled out his handcuffs and informed Plaintiff that he was under arrest. (*Id.* at ¶ 22). Makofka and Thomson then called for backup and allegedly took Plaintiff to the ground and attempted to handcuff him. (*Id.* at ¶ 22-25). Thomson testified that Plaintiff locked his hands inside his vest, making it impossible for the officers to pull Plaintiff's arms away to handcuff. (*Id.* at ¶ 24). In contrast, Plaintiff testified that he did not resist in anyway. (*Id.* at ¶ 26). Plaintiff further testified that Makofka and Thomson were striking Plaintiff with their knees and fists while holding Plaintiff on the ground. (*Id.* at ¶¶ 29-30).

Subsequently, Officers Michael Rems and Frank Laraway arrived on the scene and took positions at Plaintiff's head and feet, respectively. (*Id.* at ¶ 39). Officer Laraway put Plaintiff in a compliance hold known as an ankle lock, allegedly for the purpose of having Plaintiff comply with the Officer's commands. (*Id.* at ¶¶ 41-42). Because Plaintiff was wearing boots, Officer Laraway deemed the hold ineffective. (*Id.* at ¶ 43). Officer Thomson stated that he unsuccessfully attempted to use an elbow compliance hold to physically push Plaintiff's elbow in one direction in order to pull Plaintiff's hand out from underneath his body. (*Id.* at ¶ 45). Moreover, Officers Thomson and Rems stated that, based upon their training, they each attempted to strike Plaintiff with their hands in Plaintiff's side, which was protected by Plaintiff's padded vest. (*Id.* at ¶ 46-47). Officer Rems also stated that he tried to pull Plaintiff's arms from beneath Plaintiff and used his hands to hold down Plaintiff's head, with on and off pressure, so the other officers could control Plaintiff. (*Id.* at ¶ 47). Plaintiff testified that he was

2

struck in his head, back, ribs and an officer was attempting to break his ankle. (*Id.* at ¶ 54). Officer George Crispina and his K-9 responded to the scene as well. (*Id.* at ¶ 51). Officer Crispina gave the K-9 the order "watch him" which caused the K-9 to perk up and start barking. (*Id* at ¶ 52). After the scene was secured, Officer Crispina placed the K-9 back into his vehicle. (*Id.*) Plaintiff was issued traffic tickets for failing to exhibit a valid driver's license, registration card and insurance card in violation of N.J.S.A. 39:3-29, having clear plates in violation of N.J.S.A. 39:3-33, driving on the sidewalk in violation of N.J.S.A. 39:4-71 and reckless driving in violation of N.J.S.A. 39:4-96. Plaintiff was charged with obstruction of a governmental function in violation of N.J.S.A. 2C:29-1, and resisting arrest in violation of N.J.S.A. 2C:29-2A(1). (*Id.* at ¶ 59).

In his Complaint, Plaintiff asserts the following causes of action against Defendants: (1) Violation of Civil Rights pursuant to Title 42 U.S.C. § 1983 against individual Defendants; (2) Violation of the New Jersey Civil Rights Act and New Jersey Constitution against individual Defendants; (3) False Arrest and False Imprisonment against Individual Defendants; (4) Assault against Individual Defendants; (5) Battery against Individual Defendants; (6) Negligence against Individual Defendants; (7) Intentional Infliction of Emotional Distress against Individual Defendants; (8) Negligent Infliction of Emotional Distress against Individual Defendants; (9) Respondeat Superior and Monell Liability against Defendants City of Jersey City and Jersey City Police Department; and (10) Punitive Damages against all Defendants.

## II. LEGAL STANDARD

### A. Standard of Review

A court "shall grant summary judgment if the movant shows that there is no genuine

3

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The moving party must first demonstrate that there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317 (1986). Courts construe facts and inferences in the light most favorable to the non-movant in order to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. *Id.* at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "Thus, if a reasonable fact finder could find in the nonmovant's favor, then summary judgment may not be granted." *Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008).

### B. Legal Principles

Plaintiff claims that Defendants, while acting in their individual capacities, violated his rights pursuant to 42 U.S.C. § 1983.9 To establish section 1983 liability, a plaintiff must show " 'that the official acting under color of state law caused the deprivation of a federal right.' " *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (*quoting Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). This is because section 1983 itself is not a source of substantive rights, but provides a vehicle for vindicating the violation of rights created by the United States Constitution or federal law. *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 907 (3d Cir.1997).

### III. DISCUSSION

### A. Motions Before the Court

### 1. Defendants' Motion

Defendants argue that the Court should grant Defendants' motion for summary judgment based upon the following grounds: (1) Plaintiff's version of facts is blatantly contradicted by the video evidence and based upon the video and other undisputed facts, Jersey City is entitled to summary judgment; (2) Officer Makofka and Officer Thomson are entitled to summary judgment based upon the undisputed material facts because Plaintiff failed to produce any evidence that the officers utilized unreasonable force; (3) Plaintiff's false arrest and false imprisonment claims should be dismissed because the undisputed material evidence shows that probable cause existed for Plaintiff's arrest; (4) Officers Makofka and Thomson are entitled to qualified immunity; (5) Plaintiff failed to present any evidence that he suffered a constitutional violation as a result of a city of Jersey City custom, policy or practice and therefore, Jersey City is entitled to summary judgment; (6) Plaintiff has failed to produce any evidence to sustain his fifth, sixth, eighth, or fourteenth amendment claims and therefore, Jersey City is entitled to summary judgment; (7) Plaintiff's tort claims should be dismissed because Plaintiff failed to proffer objective medical evidence that Plaintiff sustained a permanent loss of a bodily function, permanent disfigurement, or dismemberment; and (8) Jersey City is entitled to Summary Judgment because Plaintiff failed to set forth a prima facie intentional or negligent infliction of emotional distress claim.

### 2. Plaintiff's Opposition

Plaintiff responds to Defendants' arguments by stating: (1) There are issues of material fact in dispute and therefore, Defendants' motion for summary judgment should be denied; (2) There is sufficient evidence for a factfinder to determine that an unreasonable, unnecessary

amount of force was used by Defendants; (3) There was insufficient cause for the arrest and therefore Plaintiff's claims for false arrest and imprisonment are meritorious; (4) Defendants are not protected by qualified immunity; (5) Defendants, Jersey City and the Jersey City Police Department vicariously liable under Monell; (6) There is sufficient evidence of Defendants' constitutional violations against Plaintiff pursuant to 42 U.S.C. §1983; (7) There is sufficient evidence of injury to Plaintiff; and (8) There is sufficient evidence for intentional and negligent infliction of emotional distress.

## B. Excessive Force

Where a plaintiff is claiming that an officer used excessive force during the course of an arrest, this claim is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *See, e.g., Graham*, 490 U.S. at 394–95. This inquiry requires a " 'careful balancing of nature and quality of the intrusion on an individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *See Graham,* 490 U.S. at 396 (quotations omitted). In making this inquiry, the Court must examine the totality of the circumstances involved in each case. *See Id.* In particular, the Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.; see also Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir.2004) (discussing these factors). The Third Circuit has set forth the following additional factors for consideration: the possibility that the individual is violent or dangerous; the duration of the action; whether the action takes place during the course of an arrest; the possibility that the individual is armed; and the number of persons that police must control at one time. *See Rivas*, 365 F.3d at 198 (*citing Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir.1997)).

6

Furthermore, in conducting this analysis, courts must be mindful that police officers are often required to make split-second judgments in tense and uncertain circumstances. *See, e.g., Graham,* 490 U.S. at 396–97. Thus, the Court must evaluate whether the use of force was reasonable by considering the conduct of the officer from an on-scene perspective, including the information available to the officer at the time force was applied. *See Id.* at 396; *see also Mellott v. Heemer,* 161 F.3d 117, 122 (3d Cir.1998) (stating that reasonableness in excessive force inquiry is evaluated by considering the perspective of a reasonable officer on the scene). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' ... violates the Fourth Amendment." *Graham,* 490 U.S. at 396 (internal quotation omitted). The right to make an arrest necessarily carries with it the right to use some degree of force to effect that arrest. *See Graham,* 490 U.S. at 396.

Defendants argue that based on the video evidence of the incident, it is clear that Plaintiff was in fact operating his motorcycle on the sidewalk and therefore Defendants were justified in conducting the motor vehicle stop. (Ex. Q-Video). Defendants also point to multiple instances in the video which they say contradict Plaintiff's testimony. Defendants state that Plaintiff's testimony that he did not resist arrest is contradicted by undisputable video evidence, which Defendants argue shows Plaintiff locking his hands to his protective vest in order to avoid being handcuffed. Defendants argue that the video clearly shows that the Officers did not repeatedly drive their knees into Plaintiff's back while he was on the ground, despite Plaintiff's testimony to the contrary. Further, Defendants state that the compliance holds used on Plaintiff while attempting to arrest him where necessary under the circumstances and that they were carried out in a manner consistent with their training at the Police Academy.

Plaintiff counters Defendants' arguments by stating that there is sufficient evidence for a

factfinder to determine that an unreasonable amount of force was used by Defendants. First Plaintiff states that he was "self-propelling" his motorcycle on the sidewalk at a slow speed towards the ramp to the street, rather than driving it. Next, Plaintiff cites case law for the proposition that Plaintiff was not "actively" resisting arrest because there is no evidence that Plaintiff attempted to flee or attempted to harm the officers. Finally, Plaintiff states that Defendants' explanation as to the force used on Plaintiff is understated and any conclusions as to this behavior is inappropriate for summary judgment.

Defendants respond to Plaintiff by asserting that Plaintiff fails to allege excessive force used by Officers Makofka and Thomson, but chooses to focus on the conduct of the other officers on the scene, who are not named defendants. Defendants state that their actions can be clearly viewed as reasonable throughout the surveillance video. Moreover, Defendants state that the surveillance video contradicts most, if not all of Plaintiff's testimony, including: Plaintiff's claim that he was not operating his motorcycle on the sidewalk; Plaintiff's claims that he never resisted the Officers, Plaintiff's claim that he was thrown head first to the ground by Officers Makofka and Thomson; and Plaintiff's claim that he was beaten by the Defendants while he was on the ground.

After a careful review of the video and the conduct of the Defendant Officers, as well as the other relevant evidence of record, the Court concludes that no reasonable fact finder could find in Plaintiff's favor and therefore, the Court grants summary judgment in favor of Defendants. The sidewalk surveillance video clearly shows Defendant on top of his motorcycle, operating it on the sidewalk. Thereafter, although some of Plaintiff's initial encounter with the Officers takes place out of the camera's view, it is undisputed that both the Officers and Plaintiff testified that the Officers asked for Plaintiff's credentials and thereafter upon not obtaining same

from Plaintiff, the Officers informed Plaintiff that he was under arrest. (Thomson dep. 42:6-10, 43:18-21; Ex. C- Plaintiff dep. 29:17-30:2). The Court is aware that both Defendants and Plaintiff give varying accounts regarding how many times the Plaintiff was asked for his identification, however both parties acknowledge in their testimony that Plaintiff was in fact informed that he was being placed under arrest. A careful review of the video tape also indicates that despite Plaintiff's testimony that he was only asked for his identification twice, the undisputable video evidence features the parties speaking off-camera for more than two minutes after the initial stop. New Jersey's Resisting Arrest statue states: "It is not a defense to a prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest, provided he was acting under color of his official authority and *provided the law enforcement officer announces his intention to arrest prior to the resistance.*" N.J.S.A. § 2C:29-2(A)(3)(b) (Emphasis Added). Therefore, with the exception of the number of times the Plaintiff was asked for his credentials, the rest of what transpired on camera is not disputed. Once the Officers advised Plaintiff that he was being placed under arrest, much of what ensues is clearly depicted on the unchallenged video. The video depicts the Officers attempting to place Plaintiff in handcuffs, as three parties come back into view of the camera, with Plaintiff hunched over clearly grasping his protective vest. The Officers are then seen trying to pry Plaintiff's arms free to handcuff him, eventually with all three parties falling on the ground. The video then features three minutes of the Officers trying to pry Plaintiffs hands from under his body. The fact that eventually four Officers were needed to remove Plaintiff's hands from underneath his body demonstrates the level of Plaintiff's resistance to being arrested and that no reasonable jury could conclude that Plaintiff was not actively attempting to prevent the Officers from handcuffing him. The video and what is depicted in it has not been called into question or challenged as inaccurate

by any party.

The Officers testified that they used the amount of force necessary to effectuate the arrest of Plaintiff during his active resistance, in accordance with their Police Academy training. (ECF. No 35-5 at ¶¶ 32-36; 39-49). There is no police procedure expert on behalf of the Plaintiff that suggests otherwise. After analyzing the totality of the circumstances, the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight, along with the video surveillance focusing on Defendants' actual conduct at the time of the incident, the Court has determined that no reasonable fact finder could conclude that Officers Makofka and Thomson's action indicate an unreasonable amount of force when effectuating the arrest of Plaintiff. Although there are several Officers attempting to arrest Plaintiff, the undistputable video evidence does not show the Defendants in particular, or for that matter any of the Officers using an amount of force that a reasonable fact finder could find excessive. Moreover, Plaintiff does not offer any expert testimony regarding how the Officers' actions were carried out in a manner that violated Plaintiff's rights under the circumstances or were outside proper police procedures. While the Court is cognizant that the surveillance video does not show any pedestrians at risk on the sidewalk at the time Plaintiff was operating his motorcycle, the Court still finds that operating a motorcycle on the sidewalk is nevertheless a dangerous activity which reasonably prompted the initial stop. The Court is also aware that some amount of force was in fact used in effectuating Plaintiff's arrest. However, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' ... violates the Fourth Amendment." *Graham*, 490 U.S. at 396. Officers Makofka and Thomas actions, as seen on the surveillance video, did not rise to a level sufficient to warrant a finding of a violation of the Plaintiff's Fourth

Amendment right. A plaintiff who actively resists arrest, in the manner Plaintiff demonstrated on video (folding his hands and grasping his vest to prevent the Officers from handcuffing him), exposes himself to the possibility that some amount of force may be used against him to effectuate that arrest. Therefore, as to the issue of excessive force, Defendants' motion for summary judgment is granted.

## C. False Arrest and False Imprisonment

To maintain a claim for unlawful arrest under § 1983, a plaintiff must prove that he was arrested by a state actor without probable cause. *Sharrar v. Felsing*, 128 F.3d 810, 827 (3d Cir.1997). Courts have long recognized the constitutional prohibition against arrests without probable cause. *See, e.g., Papachristou v. City of Jacksonville*, 405 U.S. 156, 169, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). *Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d Cir.1995); *Schneider v. Simonini*, 163 N.J. 336, 360-362, 749 A.2d 336 (2000) (illustrating the long line of state and federal cases that have defined the law of probable cause). Probable cause exists if at the time of the arrest "the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested." *Paff v. Kaltenbach,* 204 F.3d 425, 436 (3d Cir.2000). *See also Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). If no facts are in dispute, the existence of probable cause can be determined by the trial judge as a matter of law. *See Crescent City Live Stock Landing & Slaughter House Co. v. Butchers' Union Slaughter House & Live Stock Landing Co.*, 120 U.S. 141, 7 S.Ct. 472, 30 L.Ed. 614 (1887); *Bristow v. Clevenger*, 80 F.Supp.2d 421, 433-434 (M.D.Pa.2000).

"False imprisonment is the constraint of the person without legal justification." *Leang v.*

*Jersey City Bd. of Educ.*, 198 N.J. 557, 969 A.2d 1097, 1117 (2009) (citation and internal quotation marks omitted). "The tort of false imprisonment has two elements: (1) an arrest or detention of the person against his or her will; and (2) lack of proper legal authority or legal justification." *Id.* (citation and internal quotation marks omitted). To commit the tort, an officer need not act in bad faith or with intentional or willful disregard of a person's rights; rather, the officer may falsely imprison a person through mere negligence. *See Adams v. City of Camden*, 461 F.Supp.2d 263, 270 (D.N.J.2006) (finding that because false imprisonment does "not require that the officer has any particular state of mind, there is no per se ban [imposed by the Tort Claims Act] on this action against the municipality"); *Maurello v. U.S.*, 111 F.Supp.2d 475, 482 n. 9 (D.N.J.2000) ("To allege a cause of action for false imprisonment, it matters not whether the defendant acted with malice or bad faith; a person will be liable for false imprisonment even if he negligently believes that his confining of plaintiff is justified.").

Defendants argue that they should be granted summary judgment on Plaintiff's false arrest and false imprisonment claims, because, the undisputed evidence shows that probable cause existed for Plaintiff's arrest. Defendants state that Plaintiff clearly operated his motorcycle on the sidewalk and therefore, the Officers had probable cause to conduct a motor vehicle stop. Thus, Defendants assert, Plaintiff's illegal seizure claim based upon the stop is without merit. Moreover, Defendants contend that even if Plaintiff asserts that a genuine issue of material fact exists regarding whether Plaintiff was given a sufficient amount of time to retrieve his driving credentials, the Court's analysis must continue nonetheless. Defendants then cite to the previously mentioned resisting arrest statute for the proposition that it is not a valid defense to the charge of resisting arrest to argue that the officer was acting unlawful in making the arrest. *See* N.J.S.A. 2C:29-2A(1). Additionally, Defendants state that the surveillance video could not

12

lead a reasonable factfinder to believe that Plaintiff's behavior was consistent with someone who was obeying the officer's instruction and not resisting arrest. Therefore, Defendants argue, probable cause existed for the charges and Plaintiff's arrest.

Plaintiff responds to Defendants argument by stating that Plaintiff never refused or failed to provide his documentation when asked by the Officers, but rather told the Officers that he was getting it. Plaintiff states that Defendants had no interest in waiting for Plaintiff to produce the documentation. Plaintiff contends that the video evidence demonstrates that he did not physically resist the arrest at all. Further, Plaintiff states that he did not verbally resist and cites to case law for the proposition that even if there was verbal interference, it is insufficient for a basis for Plaintiff's arrest and imprisonment. Plaintiff asserts that that based upon these arguments, there was insufficient probable cause to support charges for obstruction and resisting arrest, and therefore insufficient probable cause to support Plaintiff's arrest and imprisonment.

Defendants respond to Plaintiff by stating that the surveillance video clearly showed Plaintiff driving his motorcycle on the sidewalk and that Plaintiff pled guilty to unsafe operation of a motor vehicle. Defendants cite to New Jersey Court Rule 7:6-2 which states that, "[o]n the request of the defendant, the court may, at the time of the acceptance of the guilty plea, order that the plea shall not be evidential in any civil proceeding." N.J. Court Rule 7:6-2(a)(1). Defendants state the there is no evidence that Plaintiff sought a civil reservation nor is there evidence that a civil reservation was entered by the court. Therefore, Defendants contend, the surveillance video and the guilty plea are conclusive evidence that Defendants had probable cause to conduct a motor vehicle stop. Moreover, Defendants assert that the surveillance video clearly shows Plaintiff resisting Defendants' attempts to arrest him and therefore, Plaintiff's false arrest claim fails as well. Defendants note that while they do not concede the issue of whether probable cause

existed for the obstruction charge, they argue that it is not germane as to whether Defendants are entitled to summary judgment. Defendants cite to case law for the proposition that the existence of probable cause for one charge defeats a plaintiff's claim for false arrest, even if Plaintiff argues that probable cause did not exist for both charges.

Having thoroughly reviewed the video in question and giving the Plaintiff the benefit of all favorable inferences, this Court nevertheless agrees with Defendants. The video evidence clearly shows Plaintiff on top of his motorcycle, maneuvering it down the sidewalk. Moreover, Plaintiff pled guilty to unsafe operation of a motor vehicle and did not provide any evidence or information that he met his burden regarding the above cited civil reservation rule. N.J. Court Rule 7:6-2(a)(1). Plaintiff therefore, has failed to demonstrate how or why Officers Makofka and Thomson lacked the proper legal authority or legal justification to detain him once they viewed him operating his motorcycle on the sidewalk. The Court therefore grants summary judgment in favor of Defendants on the issue of false imprisonment.

The Court is cognizant that Plaintiff contends that a genuine issue of material fact exists as to whether Plaintiff was provided enough time to retrieve his documentation and thus claims that he was falsely arrested. However, as previously stated, it is not a valid defense to the charge of resisting arrest that the officer was allegedly acting unlawfully in making the arrest. *See* N.J.S.A. 2C:29-2A(1). Additionally, both parties have testified and it is undisputed that the Officers informed Plaintiff that he was under arrest, as is required under the statute. *Id.* Moreover, the off-camera conversation that Plaintiff had with the Officers while Plaintiff was still on his motorcycle lasted over two minutes before the parties come back into view of the camera. Plaintiff was charged with obstructing administration of law and other government function, as well as resisting arrest. In *Edwards v. City of Philadelphia*, an arrestee argued that

14

the district court erred by omitting reference to his aggravated assault charge and referring only to his automobile theft charge, when it instructed the jury on probable cause regarding the claim of false arrest. Edwards v. City of Philadelphia, 860 F.2d 568, 575 (3d Cir. 1988) The Third Circuit held that the existence of probable cause, therefore, justified the arrest—and defeats Plaintiff's claim of false arrest—even if there was insufficient cause to arrest on the aggravated assault claim alone. *Id.; Citing* Linn v. Garcia, 531 F.2d 855, 862 (8th Cir.1976) ("when a peace officer has probable cause to believe that a person is committing ... [an] offense, he is justified in arresting that person, and it is immaterial that the officer may have thought, without probable cause, that the defendant was committing or had committed other offenses as well.").

Similarly, Defendants had probable cause to stop and detain Plaintiff, once they viewed him operating his motorcycle on the sidewalk. Once they informed Plaintiff that he was under arrest, Plaintiff's false arrest claim is defeated because the video clearly shows Plaintiff resisting arrest by crouching over and locking his hands across his protective vest, while the Defendants attempt to handcuff him. As articulated by the Third Circuit, it is irrelevant to this Court's analysis as to whether probable cause existed for the obstruction charge because there is probable cause for the resisting arrest charge. Therefore, the Court grants summary judgment in favor of Defendants on the issue of Plaintiff's false arrest claims.

**D. Qualified Immunity**

Government officials are entitled to qualified immunity under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (citation omitted); *see also Curley v. Klem*, 298 F.3d 271, 277 (3d Cir.2002) (citation omitted). The Supreme Court has repeatedly emphasized the importance of resolving immunity questions at the earliest possible stages of litigation. *Pearson*, 555 U.S. at 232; *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Defendants bear the burden of establishing that they are entitled to qualified immunity. *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir.1989) (citing *Ryan v. Burlington Cnty.*, 860 F.2d 1199, 1204 n. 9 (3d Cir.1988), cert denied, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989)).

Although not mandatory, Courts may apply a two (2) part test, known as the *Saucier* procedure, in order to determine if qualified immunity is applicable. "Because the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson*, 555 U.S. 223, 242, 129 S. Ct. 808, 821, 172 L. Ed. 2d 565 (2009) This Court determines that the *Saucier* procedure is appropriate in this matter.

First, the court must address whether "the officer's conduct violated a constitutional right[.]" *Saucier,* 533 U.S. 194, 201, (2001). If, and only if, the court finds a violation of a constitutional right, the court should then determine whether the right was clearly established. In other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Defendants argue that Officers Makofka and Thomson are entitled to qualified immunity. Defendants state that at no point does the video show Officer Makofka kicking or kneeing

Plaintiff, despite Plaintiff testifying to the contrary. Moreover, Defendants state that even if the Court were to find that Officer Makofka's actions are a constitutional violation, the right was not clearly established at that time. Specifically, Defendants contend, there is no evidence that Officer Makofka was aware that detaining a physically resisting person who was under arrest with the tactics authorized by the Attorney General's use of force policy was a constitutional violation. Next, Defendants states that the video evidence does not show Officer Thompson kicking or kneeing Plaintiff, despite Plaintiff's testimony to the contrary. Defendants assert that Officer Thomson has testified that his attempted elbow compliance hold, as well as his strike to Plaintiff's side in an attempt to force Plaintiff to release his arms are tactics approved by the Police Academy. Defendants also make the same argument, regarding a right not being clearly established, as they did regarding Officer Makofka's actions.

Plaintiff responds to Defendants' arguments by stating that Defendants are not entitled to qualified immunity. Plaintiff states that given the facts and circumstances of this case as asserted by Plaintiff, Defendants did not act reasonably and used unnecessary, excessive force. Plaintiff claims that because Defendants were violating his constitutional rights in connection with the constitutional claims being asserted by Plaintiff, Defendants are not entitled to qualified immunity.

This Court agrees with Defendants. There was no constitutional right violated by Defendants. As the Court has already discussed, Defendants did not violate Plaintiffs right when he was detained and subsequently arrested, because probable cause existed for both actions. Both of these findings are supported by the video evidence of the entire incident. Without a finding of a violation of a constitutional right, the Court need not undertake whether a right was clearly established. Therefore, the Court grants summary judgment in favor of Defendants on the issue

17

of qualified immunity.

**E. Monell Liability**

Plaintiff asserts 42 U.S.C. § 1983 *Monell* liability against the Jersey City and JCPD. In *Monell v. Dep't of Social Services,* the United States Supreme Court held that:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible § 1983.

*Monell,* 436 U.S. 658, 694 (1978).

The Supreme Court has also concluded that *Monell* liability only attaches where "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. Cincinnati,* 475 U.S. 469, 482 (1986). Moreover, the Court held that §1983 municipal liability attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id. at 483.*

Defendants argue that Plaintiff has failed to present any evidence that Plaintiff suffered a constitutional violation as a result of a City of Jersey City custom, policy, or practice. Defendants state that Plaintiff's claim must be dismissed because there is no underlying violation of his constitutional rights. Moreover, Defendants contend, even if there was a violation, Plaintiff has failed to present any evidence that the alleged violation was a result of a City custom, policy and/or practice.

Plaintiff responds to Defendants argument that following Plaintiff's initial complaint to the Police department regarding his treatment by Defendants, there was an internal investigation which exonerated Defendants, despite the facts that no person ever questioned the Officers verbally regarding the incident. Plaintiff asserts that the warrants issued by Defendants were approved by supervisors. It is Plaintiff's contention that because these acts were approved by supervisory personnel, *Monell* liability should be imposed.

The Court finds that Plaintiff's arguments are without merit. Nowhere within the record does Plaintiff identify a specific custom, practice, or policy implemented by Defendants which caused a constitutional violation to Plaintiff. Without the presence of this crucial element, the Court cannot impose *Monell* liability upon Defendants. Therefore, the Court finds summary judgment in favor of Defendants on the issue of *Monell* liability.

## F. Fifth, Sixth, Eighth, Fourteenth Amendment Claims

Defendants assert that in Count One of the Complaint, Plaintiff simply alleges that Defendants violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Defendants argue that Plaintiff's claims should be dismissed because he failed to satisfy the applicable pleading standard, as well as be entitled to summary judgment because the record is devoid of any evidence to support Plaintiff's claims. Defendants state the Fifth Amendment claim fails because it is well established that the Fifth Amendment only restricts federal government actions and it is undisputed that Defendants are not federal officials. Defendants assert that Plaintiff's Sixth Amendment claim fails because Plaintiff's reference to the Sixth Amendment is so vague that Defendants cannot determine an alleged cause of action. Finally, Defendants argue that Plaintiff has failed to present any evidence in support of his Eighth and Fourteenth Amendment

claims because: (1) the Eighth Amendment only applies to post conviction violations to which there are no allegations of any post-conviction conduct in this matter; and (2) Plaintiff's false arrest and excessive force claims are properly analyzed under the Fourth Amendment and therefore, a Fourteenth Amendment due process analysis is inappropriate.

Plaintiff responds to Defendants arguments by stating that his claims should not be limited to a Fourth Amendment claim because Plaintiff is asserting that he was deprived of his liberty, arrested and imprisoned without probable cause, and therefore did not benefit from due process of the law. Next Plaintiff states that his sixth amendment claim must continue because Plaintiff was not informed of the nature and cause of the accusations against him when he was stopped and arrested. Finally, Plaintiff contends that whether Court decides to use an Eighth or Fourth Amendment analysis is of little consequence. In either event, Plaintiff states that Defendants used excessive force, unwarranted by the facts and circumstances of the incident and without probable cause, causing injury to Plaintiff. Therefore, Plaintiff argues, Plaintiff's §1983 and NJCRA claims are supported by the facts as set forth by Plaintiff and should be permitted to proceed to jury. Plaintiff does not address Defendants' arguments regarding the Fifth Amendment.

Defendants respond to Plaintiff's Sixth Amendment argument by citing to case law for the proposition that it is irrelevant whether Plaintiff was informed as to why he was arrested, because Sixth Amendment protections only attach at the critical stage of criminal proceedings. Next, Defendant points out the Plaintiff's Eighth Amendment claim fails because Eighth Amendment protection only applies to post-conviction violations and Plaintiff has not alleged any post-conviction violations. Finally Defendants cite case law for the proposition that although not all police officer actions are governed by the Fourth Amendment, the constitutionality of

arrests are, as opposed to the due process analysis.

The Court finds that Plaintiff's arguments are misguided. As argued by Defendants, the Fifth Amendment only restricts federal government actions and it is undisputed that Defendants are not federal officials. *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009)("[T]he due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials.") Next, while Plaintiff argues that his Sixth Amendment claim must proceed because he was not informed of the reason for his arrest, it is well established that the Sixth Amendment does not apply until formal adversary proceedings have begun. *Moran v. Burbine*, 475 U.S. 412, 462-63 (1986). Regarding, Plaintiff's Eighth Amendment Claim, while the Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners, it applies only "after [the State] has secured a formal adjudication of guilt in accordance with due process of law." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (quoting Ingraham v. Wright, 430 U.S. 651, 671–72 n. 40, (1977)). Plaintiff has not alleged any post-conviction violations. Finally, the Court has already stated above that where a plaintiff is claiming that an officer used excessive force during the course of an arrest, this claim is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *See, e.g., Graham*, 490 U.S. at 394–95. Therefore, a Fourteenth Amendment analysis is not appropriate in light of the alleged actions Plaintiff has asserted against the Defendants. Based upon the above findings, the Court grants summary judgment in favor of Defendants on the issue of Plaintiff's Fifth, Sixth, Eighth, and Fourteenth Amendment Claims.

**G. Tort Claims**

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J.S.A. 59:9–2(d). To recover under the Act for pain and suffering, a plaintiff must prove by objective medical evidence that the injury is permanent. *Brooks v. Odom*, 150 N.J. 395, 402-03, 696 A.2d 619, 622-23 (1997). Temporary injuries, no matter how painful and debilitating, are not recoverable. *Id.* Further, a plaintiff may not recover under the Tort Claims Act for mere "subjective feelings of discomfort." *Ayers v. Township of Jackson*, 106 N.J. 557, 571, 525 A.2d 287 (1987).

Defendants argue that the record is devoid of any objective medical evidence that Plaintiff satisfied the injury threshold. Defendants point to the fact that Plaintiff has failed to produce any expert testimony that Plaintiff sustained a permanent loss of bodily function that was a substantial result of this incident. Plaintiff responds to Defendants' arguments by stating that Plaintiff has indeed testified in detail regarding his injuries, as well as the fact that a significant amount of documentation, such as medical records, have been produced to show the severity and potentially permanent nature of the injuries. Defendants respond to Plaintiff by citing case law for the proposition that Plaintiff's complaints of permanent pain must be supported by objective, rather than subjective medical evidence. Defendants assert that Plaintiff has failed to proffer any medical expert's finding to determine that his alleged injuries are a result of the incident in question and constitute a permanent loss of bodily function.

The Court carefully reviewed the record and the arguments of the parties and is persuaded that there is a total absence of objective medical evidence in the record of any

permanent loss of bodily function resulting from Plaintiff's arrest by Defendants. Although the record indicates that Plaintiff suffered an "abrasion (scrape)", an elbow injury which does not involve a fracture, a minor head injury, neck pain or strain, "a small focal central disk herniation", Plaintiff has not offered any objective evidence as to how these injuries have resulted in a "permanent loss of a bodily function, permanent disfigurement or dismemberment". Moreover, Dr. Parika's impression is that both Plaintiff's back and elbow did not sustain an acute fracture or subluxation. (*See* ECF No. 39-2 at 111-12). Plaintiff therefore, has failed to meet the objective evidence of permanent injury threshold as imposed by N.J.S.A. 59:9–2(d). Therefore, the Court grants summary judgment in favor of Defendants on the issue of Plaintiff's tort claims.

## H. Intentional and Negligent Infliction of Emotional Distress

Defendants argue that Defendants enjoy immunity to Plaintiff's claims of intentional and negligent infliction of emotional distress because the alleged injuries occurred during Defendants good faith execution of the law. Defendants cite to N.J.S.A. 59:3-3 for the proposition that a public employee is not liable if he acts in good faith in the execution or enforcement of any law. Plaintiff responds to Defendants by asserting that Defendants did not act in good faith during the incident. Plaintiff also contends that Defendants owed a duty to act reasonably to Plaintiff when effectuating the arrest and breached that duty by using unwarranted, excessive force.

As stated above, the Court has already determined that the Defendants did not use excessive force when effectuating the arrest of Plaintiff. As a result, Defendants cannot be held liable for intentional nor negligent infliction of emotional distress because Defendants neither acted in bad faith when enforcing the law nor breached a duty owed to Plaintiff when

effectuating his arrest. Therefore, the Court grants summary judgment in favor of Defendants on the issues of intentional and negligent infliction of emotional distress.

## IV. CONCLUSION

For the foregoing reasons, Defendants motion for summary judgment is granted as to all counts of Plaintiff's Complaint. The Clerk's Office is hereby directed to close the Court's file in this matter.

An appropriate Order follows this Opinion.

DATE: February 10, 2015

Jose L. Linares
United States District Judge